| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | FOR THE EASTERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| JENNIFER AMELIA ROSE, | Case No. 1:18-cv-01384-LJO-JDP |
| Plaintiff, | SCREENING ORDER |
| v. | FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF BE PERMITTED TO PROCEED ON COGNIZABLE CLAIMS AND THAT NON-COGNIZABLE CLAIMS BE DISMISSED WITH LEAVE TO AMEND |
| R. ADAIR, *et al.*, | |
| Defendants. | |
| | OBJECTIONS, IF ANY, DUE IN 14 DAYS |
| | ECF No. 1 |

Plaintiff Jennifer Amelia Rose[1] is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff's complaint, filed October 9, 2018, ECF No. 1, is before the court for screening under 28 U.S.C. § 1915A. The court finds that plaintiff has stated excessive force claims against defendants Moody, Adair, Harmon, Franco, and Rodriguez; a deliberate indifference claim against defendant Agbayani; and an equal protection claim against defendant Harmon. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that she be granted leave to amend the complaint.

### I. SCREENING AND PLEADING REQUIREMENTS

A district court is required to screen a prisoner's complaint seeking relief against a

---
[1] Plaintiff is also known as John David Gann.

governmental entity, its officer, or its employee. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016) (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)).

## II. FACTUAL ALLEGATIONS[2]

Plaintiff is currently incarcerated at Mule Creek State Prison ("MCSP") in Ione, California. ECF No. 10. Plaintiff alleges constitutional violations arising out of her confinement at Kern Valley State Prison ("KVSP"). ECF No. 1 at 3. Plaintiff names six defendants, all of whom are employed at KVSP: R. Adair, a correctional officer; J. Harmon, a correctional officer;

---

[2] The court draws the facts of this section from plaintiff's complaint, ECF No. 1, and accepts them as true for purposes of screening.

2

M. Franco, a correctional officer; A. Rodriguez, a correctional officer; M. Moody, a correctional sergeant; and M. Agbayani, a licensed vocational nurse. *Id.* at 2.

Plaintiff alleges:

> On September 13, 2016, plaintiff Jennifer Rose, a male-to-female transsexual or transwoman, was an inmate at KVSP, Facility D, housing unit 1, when she was [viciously] attacked and beaten by correctional officers (c/o) Adair and Harmon without warning. As plaintiff Ms. Rose faced a wall and locker with her hands up, c/o Adair hit her from behind and tackled her to the ground, while simultaneously c/o Harmon swung at plaintiff's right side facial and head area either with his fist or a weapon. Ms. Rose fell to the concrete floor where she became pinned under the full bodyweight of c/o Adair unable to move as c/o Harmon kicked her in the face and called her a "faggot" (a derogatory term toward gay or transgender people). Plaintiff noticed blood dripping from her forehead as c/o Adair kept yelling "stop resisting!" as [he] continued punching her in the head and wrestling her arms behind her back. C/o Adair and c/o Harmon placed plaintiff in [handcuffs] and lifted her by each arm to her feet to be escorted out of the housing unit to the Facility D Medical Clinic. This entire incident happened under direct supervision and orders of Sgt. Moody.

ECF No. 1 at 3, 5. While plaintiff was en route to the medical clinic, plaintiff was transferred to the custody of c/o Franco and c/o Rodriguez. *Id.* at 5. Plaintiff alleges that while she was in "handcuff restraints and defenseless," Franco and Rodriguez assaulted her: they "body slammed plaintiff face down on the asphalt track and dropp[ed] their knees and body weight on plaintiff's back and head." *Id.* at 6. At this point, plaintiff "was bleeding from a serious head injury and pinned to the ground under the full bodyweight of Franco and Rodriguez unable to [breathe] or inhale." *Id.* Sgt. Moody then ordered plaintiff to be put in "leg restraints and a spit mask." *Id.* "Plaintiff was then lifted and placed face down [in] a gurney and strapped in." *Id.*

Plaintiff was then transported to the clinic, where she remained for four to five hours. *Id.* at 7. Plaintiff repeatedly requested medical care, but nurse Agbayani told her that "nothing could be done for [her] per Sgt. Moody and that there was 'no injury, only dried blood.'" *Id.* Plaintiff was transported to the administrative segregation unit, where a nurse took note of plaintiff's injuries and referred her to the Correctional Treatment Center for emergency transportation to the

Delano Regional Medical Center. *Id.* There, "Plaintiff received multiple stitches for a 4 cm laceration/cut on her forehead, a CT scan and x-rays for the serious head injury." *Id.* at 7-8. Plaintiff suffered additional injuries as well. *Id.* at 8.

### III. DISCUSSION

#### A. Requirements Under 42 U.S.C. § 1983

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). To state a claim under § 1983, a plaintiff must show that a defendant acting under color of state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). The plaintiff can satisfy the causation requirement by showing either (1) the defendant's "personal involvement" in the alleged deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a supervisor and the alleged deprivation. *See King v. Cty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir. 2018). As for the second method, the plaintiff can establish a causal connection by showing that the defendant "set[] in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others," which the defendant "knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*.

All named defendants are state-prison employees who, accepting plaintiff's allegations as true, can be inferred to have acted under color of state law. *See Paeste v. Gov't of Guam*, 798 F.3d 1228, 1238 (9th Cir. 2015) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988))). We next consider whether plaintiff sufficiently alleged facts to satisfy the causation requirement.

Plaintiff has plausibly alleged that all defendants personally participated in or caused the alleged deprivations. Plaintiff alleges that Adair, Harmon, Franco, and Rodriguez each used excessive force on her. Plaintiff alleges that Moody ordered and supervised the attack. Finally, plaintiff alleges that Agbayani withheld medical treatment that plaintiff required.

The remaining question is whether defendants violated federal law. Plaintiff seeks to

4

bring claims for cruel and unusual punishment, due process violations, and equal protection violations. ECF No. 1 at 8-9. Plaintiff's allegations do not support due process claims. However, the alleged facts do implicate cruel and unusual punishment and equal protection violations. Thus, we will analyze below whether plaintiff has stated such claims against defendants.

### B. Excessive Force

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force" against inmates. *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For claims arising out of the use of excessive physical force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). To facilitate this inquiry, the Supreme Court has articulated five factors to consider: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7.

While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. *See id.* Whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident. *See id.*; *see also Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) (holding no lasting injury required for an act to qualify as sexual assault because sexual assault was deeply offensive to human dignity); *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991) (holding that it is not the degree of injury that makes out a violation of the Eighth Amendment but rather use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity). That is not to say that every

malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Hudson*, 503 U.S. at 9-10 (concluding that blows directed at inmate which caused bruises, swelling, loosened teeth and a cracked dental plate were not *de minimis*).

Here, plaintiff has stated excessive force claims against defendants Moody, Adair, Harmon, Franco, and Rodriguez. Plaintiff alleges that Adair, Harmon, Franco, and Rodriguez assaulted her without warning, causing serious injury. ECF No. 1 at 3, 5-6. She alleges that that Moody ordered and supervised the attack. *Id.* at 5.

### C. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotation marks omitted)). "This second prong— defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

6

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Here, the court finds that plaintiff has a stated a deliberate indifference claim against defendant Agbayani. Plaintiff's allegations satisfy the first prong because her injuries led to her hospitalization. ECF No. 1 at 7-8. Plaintiff's allegations satisfy the second prong because she told Agbayani that she required medical aid, but Agbayani nonetheless withheld medical treatment, causing plaintiff harm. *Id.*

### D. Equal Protection

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class). "The first step in equal protection analysis is to identify the [defendants' asserted] classification of groups." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal quotation marks omitted). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination

can be identified." *Id.* at 1167. Classifications based on race, alienage, national origin, and gender all receive heightened scrutiny. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). In *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000), the Ninth Circuit explained that gender means "an individual's sexual identity," and that, under the Supreme Court's holding in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), when a defendant's action is based upon the fact that the plaintiff fails to "conform to socially-constructed gender expectations," the defendant has engaged in gender-based discrimination. *Schwenk*, 204 F.3d at 1201-02. At least one court in this Circuit has construed *Schwenk* to conclude that "discrimination based on transgender status independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a 'suspect' or 'quasi-suspect classification' identified by the Supreme Court." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015).

Here, plaintiff alleges that she is a transgender individual and that Harmon attacked her "based on her gender identity, sex, or sexual preferences." ECF No. 1 at 3, 9. At the first step of the equal protection analysis, the court identifies defendant's asserted classification of groups as (1) inmates who conform with gender stereotypes and (2) inmates who do not conform with gender stereotypes. Plaintiff is in the latter group and has alleged that Harmon attacked her because of this classification. *Id.* at 5 (alleging that defendant Harmon called her a "faggot" while he attacked her). On these facts, the court concludes that plaintiff has stated an equal protection claim against defendant Harmon.[3] Plaintiff has not stated an equal protection claim against any other defendant because she has failed to allege any facts evidencing discriminatory

---

[3] Whether transgender individuals are a protected class and which level of scrutiny to use in such cases are unsettled issues of law, and the issues have not yet been briefed in this case. We will allow plaintiff's claim to proceed at this stage because it has an arguable basis in law. *See Guti v. U.S. I.N.S.*, 908 F.2d 495, 496 (9th Cir. 1990) (holding that, at the screening stage, a claim may be dismissed as frivolous only when it "lack[s] any arguable basis in law or in fact"). Should this issue remain relevant at later stages of the case, we will seek briefing from the parties. If appropriate, the court will consider a request from plaintiff for the court to appoint counsel to assist with such briefing, since the complexity of the issue may exceed the capabilities of an incarcerated, pro se litigant.

8

intent.

## IV. CONCLUSION

The court has screened plaintiff's complaint and finds that plaintiff has stated excessive force claims against defendants Moody, Adair, Harmon, Franco, and Rodriguez; a deliberate indifference claim against defendant Agbayani; and an equal protection claim against defendant Harmon. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that she be granted leave to amend the complaint.

Should plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of plaintiff's constitutional or other federal rights. *See Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. *See id.* at 677. Plaintiff must allege that each defendant personally participated in the deprivation of her rights. *Jones*, 297 F.3d at 934 (emphasis added). Plaintiff should note that a short, concise statement of the allegations in chronological order will assist the court in identifying her claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of plaintiff's rights. Plaintiff should also describe any harm she suffered from the violation of her rights. Plaintiff should not fundamentally alter her complaint or add unrelated issues. *See* Fed. R. Civ. P. 18; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . .").

Any amended complaint will supersede the original complaint, *Lacey v. Maricopa County*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete on its face without reference to the prior, superseded pleading, *see* E.D. Cal. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be titled "First

Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

**V.      RECOMMENDATIONS**

Under 28 U.S.C. § 636(c)(1), all parties named in a civil action must consent to a magistrate judge's jurisdiction before that jurisdiction vests for "dispositive decisions." *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). No defendant has appeared or consented to a magistrate judge's jurisdiction, so any dismissal of a claim requires an order from a district judge. *Id.* Thus, the undersigned submits the following findings and recommendations to a United States District Judge under 28 U.S.C. § 636(b)(l):

1. Plaintiff states excessive force claims against defendants Moody, Adair, Harmon, Franco, and Rodriguez; a deliberate indifference claim against defendant Agbayani; and an equal protection claim against defendant Harmon.
2. Plaintiff's remaining claims should be dismissed without prejudice, and plaintiff should be granted leave to amend the complaint.
3. If plaintiff files an amended complaint, defendants Agbayani, Moody, Adair, Harmon, Franco, and Rodriguez should not be required to respond until the court screens the amended complaint.

Within fourteen days of service of these findings and recommendations, plaintiff may file written objections with the court. If plaintiff files such objections, she should do so in a document captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   May 6, 2019                                    _____
                                                        UNITED STATES MAGISTRATE JUDGE

No. 203.